UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF NEVADA *ex rel.* THOMAS MOONEY, and THOMAS MOONEY, INDIVIDUALLY,<br><br>Plaintiff(s),<br><br>v.<br><br>FIFE DERMATOLOGY, PC, d/b/a SURGICAL DERMATOLOGY & LASER CENTER, et al,,<br><br>Defendant(s). | Case No. 2:17-CV-2191 JCM (EJY)<br><br>ORDER |

Presently before the court is Vivida Dermatology ("Vivida"), Douglas Fife, M.D. ("Dr. Fife"), and Heather Fife (collectively, "defendants")'s motion for summary judgment (ECF No. 71) and errata (ECF No. 74). Plaintiff Thomas Mooney ("plaintiff") filed a response (ECF No. 81), to which defendants replied (ECF No. 84).

**I.     Background**

On April 3, 2017, plaintiff began a new job as Chief Operating Officer of Vivida, a dermatology practice led by Dr. Fife. (ECF No. 81 at 2). Plaintiff had significant experience as a healthcare administrator, but he had no experience in dermatology. (*Id.* at 7.) He was hired to, among other duties, manage Vivida's finances, ensure compliance with Medicare and Medicaid billing regulations, and report failures to comply with those regulations. (*Id.* at 4–5). Plaintiff's employment agreement contained a "for cause" termination provision allowing Vivida to terminate his employment for specific conduct, including if he breached the confidentiality clause. (*Id.* at 4). The agreement provided that plaintiff could not "divulge, disclose or communicate to any person, firm or corporation . . . information concerning the business of

**James C. Mahan**
**U.S. District Judge**

1  [Vivida], its manner of operation, its plans, processes, or other data, or any information
2  ascertained" through his employment. (ECF No. 74-2 at 13).

3  On June 21, 2017, Vivida fired plaintiff using the for-cause provision of the agreement,
4  alleging that he violated the confidentiality clause. (ECF No. 81 at 4). On June 1, 2017, plaintiff
5  had a conversation with a doctor at another dermatology practice in which he indicated that
6  Vivida was "in the market" and looking to purchase another practice. (ECF No. 81-6 at 9–10).
7  Vivida interpreted this interaction as a breach of the confidentiality clause and fired plaintiff in a
8  termination letter. (ECF No. 81 at 4).

9  Plaintiff filed the instant action as a *qui tam* claim against Vivida based on allegations of
10 Medicare and Medicaid fraud. (ECF No. 1). He later amended his complaint to include
11 allegations of breach of contract and retaliation. (ECF No. 63). Defendants now move for
12 summary judgment on all claims. (ECF No. 71).

13 **II.    Legal Standard**

14 The Federal Rules of Civil Procedure allow summary judgment when the pleadings,
15 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16 any, show that "there is no genuine dispute as to any material fact and the movant is entitled to
17 judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment
18 is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477
19 U.S. 317, 323–24 (1986).

20 For purposes of summary judgment, disputed factual issues should be construed in favor
21 of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to
22 be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts
23 showing that there is a genuine issue for trial." *Id.*

24 In determining summary judgment, the court applies a burden-shifting analysis. "When
25 the party moving for summary judgment would bear the burden of proof at trial, it must come
26 forward with evidence which would entitle it to a directed verdict if the evidence went
27 uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

28

James C. Mahan
U.S. District Judge

(9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**James C. Mahan**
**U.S. District Judge**

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.   Discussion**

   a.   Retaliation

The Federal False Claims Act ("FCA") protects employees from adverse employment actions when they are investigating conduct that potentially violates the act. A successful retaliation claim under the FCA requires an employee show he was (1) engaged in protected conduct under the act, (2) the employer knew the employee was engaged in that conduct, and (3) the employer discriminated against the employee because of that protected conduct. *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1060 (9th Cir. 2011).

"Where a plaintiff merely advised her superiors of noncompliance and warned of consequences for noncompliance, and her monitoring and reporting activities were required to fulfill her job duties," an employer does not have the knowledge required to substantiate a retaliation claim. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, No. CV06-1381PHXNVW, 2009 WL 1457036 (D. Ariz. May 21, 2009), *aff'd sub nom. id.* If an employee's job duties include compliance and reporting, that employee must suggest he intends to bring an FCA claim or otherwise report the misconduct to the regulatory authority for an employer to be sufficiently on notice and trigger FCA protection. *See United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 908 (9th Cir. 2017).

Plaintiff mentions in his deposition that he reported potential fraud to Dr. Fife. *See, e.g.,* (ECF No. 74-4 at 38, 40). These reports were also undisputedly part of the plaintiff's job description. (*Id.* at 21; ECF No. 74-2 at 22). Ensuring compliance with billing regulations and reporting irregularities were "by-and-large the types of activities [plaintiff] was hired to do;"

James C. Mahan
U.S. District Judge

- 4 -

thus, "it takes more than an employer's knowledge of the activity to show that an employer was on notice of a potential *qui tam* suit." *Campie*, 862 F.3d at 908; (ECF No. 74-2 at 22).

There is no evidence that plaintiff went beyond reporting the potential fraud to Dr. Fife, as he was hired to do. Without more, plaintiff cannot show the Vivida was on notice of protected activity under the FCA. *See Campie*, 862 F.3d at 908. According to plaintiff's evidence, as far as Vivida knew, there was no indication that he was doing anything other than his job—notifying Vivida that it might be non-compliant with Medicare and Medicaid regulations. *See id;* (ECF No. 74-2 at 22; ECF No. 74-4 at 38). There is no genuine issue of material fact. Vivida did not have notice that plaintiff was engaged in a protected activity under the FCA. The court grants summary judgment to defendants on the FCA retaliation claim.

 b.  <u>Breach of Contract</u>

To prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016).

When a contract is clear and unambiguous, contract construction is a question of law and "suitable for determination by summary judgment." *Ellison v. California State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990); *see also Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). Nevada's longstanding policy is to interpret and enforce contracts based on the written language, reading words in their usual and ordinary meaning. *Ellison*, 993 P.2d at 1263; *Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 87 P.3d 1054, 1059 (Nev. 2004).

Alternatively, summary judgment is not appropriate when a contract is ambiguous, as the court must rely on extrinsic evidence to resolve ambiguous terms. *Dickenson v. Satte, Dep't of Wildlife*, 877 P.3d 1059, 1061 (Nev. 1994). A contract is ambiguous if it may be reasonably interpreted in more than one way. *Galardi*, 301 P.3d at 366. Ambiguity does not arise simply because the parties disagree on how to interpret the contract. *Id*.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    Plaintiff's breach of contract claim is based on his contention that defendants fired him without cause. (ECF No. 81 at 21). Section 7(b)(2) of plaintiff's employment contract provided that he could be terminated for cause if he violated any "terms and conditions of this agreement, including, but not limited to, any confidentiality provisions." (ECF No. 63, Ex. E at 6). The relevant confidentiality provision in § 8(a) states that plaintiff could not "divulge, disclose, or communicate to any person . . . information concerning the business of [Vivida], its manner of operation, its plans, processes, or other date, or any information ascertained by [plaintiff] through [plaintiff's] employment with [Vivida]." (*Id.* at 8). These contract terms are unambiguous and undisputed. (ECF No. 81 at 3–4); *see Ellison*, 993 P.2d at 1263.

The termination letter specified that plaintiff was fired for violating § 8(a) in his conversation with Dr. Ken Landow. (ECF No. 63, Ex. B at 3). Plaintiff himself admits that a prospective acquisition of another dermatological practice would constitute "plans" under § 8(a). (ECF No. 74, Ex. C at 130). Likewise, he admits that he told Dr. Landow that Vivida was "in the market." (ECF No. 81-6 at 9–10).

Plaintiff thus defeats his own argument. His deposition testimony proves that he disclosed information he knew could be confidential—the acquisition plans—by stating Vivida was "in the market," thus violating § 8(a) of the employment agreement. (*Id.*) There is no genuine issue of material fact. Plaintiff breached the unambiguous language of § 8(a), therefore defendants had cause to terminate him under § 7(b)(2). The court grants summary judgment to defendants on the breach of contract claim.

. . .

**James C. Mahan**
**U.S. District Judge**

     c.  <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

"An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other." *Frantz v. Johnson*, 999 P.2d 351, 358 n.4 (Nev. 2000).

> With respect to the covenant of good faith and fair dealing, [the Nevada Supreme Court] ha[s] stated that "when one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."

*Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (quoting *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991)) (alteration omitted).

A contractual breach of the implied covenants of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v Butch Lewis Prods.*, Inc., 808 P.2d 919, 922–23 (Nev. 1991); *see Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016).

It is true that a party may plead alternative or even inconsistent claims. Fed. R. Civ. P. 8(d)(2)–(3). However, plaintiff must also provide enough evidence to create a genuine issue of material fact for that alternative, inconsistent claim to survive summary judgment. *See Celotex Corp.*, 477 U.S. at 323–24. Plaintiff fails to do so here. He never argues that defendants literally complied with the contract, as a claim for breach of the implied covenant requires. *See Hilton Hotels*, 808 P.2d at 922–23. He argues the defendants "falsely accused [him] of breaching confidentiality so that they could manipulate a termination of the contract under its terms." (ECF No. 81 at 27). However, "a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Shaw*, 201 F. Supp. 3d at 1252.

Whether cloaked as a breach of contract claim or a breach of the implied covenant of good faith and fair dealing, plaintiff's argument is the same—he did not breach confidentiality and therefore should not have been terminated. *Compare* (ECF No. 81 at 21 (claiming

defendants breached his contract because the reason for his termination was "concocted")) *with* (ECF No. 81 at 27 (asserting, without evidentiary support, that "[Dr. Fife] got together with his lawyer and concocted the false accusation of breach of confidentiality" contravening the implied covenant)).  That is not the harm the implied covenant of good faith and fair dealing protects. *See Shaw*, 201 F. Supp. 3d at 1252.  There is no genuine issue of material fact as to whether defendants literally complied with the contract while contravening its "intention and spirit." *See Hilton Hotels*, 808 P.2d at 922–23.  The court grants summary judgment for defendants as to plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 71) be, and the same hereby is, GRANTED.

The clerk is instructed to close the case accordingly.

DATED August 29, 2022.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -