UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF NEVADA *ex rel.* THOMAS MOONEY, and THOMAS MOONEY, INDIVIDUALLY,<br><br>Plaintiff(s),<br><br>v.<br><br>FIFE DERMATOLOGY, PC, d/b/a SURGICAL DERMATOLOGY & LASER CENTER, et al,,<br><br>Defendant(s). | Case No. 2:17-CV-2191 JCM (EJY)<br><br>ORDER |

Presently before the court is defendants Vivida Dermatology, Douglas Fife, M.D., and Heather Fife (collectively "defendants")'s motion for attorney fees and costs. (ECF No. 90). Plaintiff Thomas Mooney filed a response (ECF No. 93), to which defendants replied (ECF No. 94).

**I.     Background**

This action arises out of an employment dispute.  Plaintiff was formerly Vivida Dermatology's COO. (ECF No. 85). He was hired and signed an employment agreement to, essentially, manage Vivida's finances and operations. (*Id.*) That agreement contained a for-cause termination provision allowing Vivida, through its principal Douglas Fife, to fire plaintiff if he breached the agreement's confidentiality clause. (*Id.*)  That clause provided that he could not "divulge, disclose or communicate to any person, firm or corporation . . . information concerning the business of [Vivida], its manner of operation, its plans, processes, or other data, or any information ascertained" through his employment. (*Id.*)

**James C. Mahan**
**U.S. District Judge**

1   Roughly four months after he was hired, plaintiff had a conversation with a doctor at
2   another dermatology practice and disclosed that Vivida was "in the market" as it pertained to
3   potential mergers and acquisitions. (*Id.*) After learning of this conversation, defendants
4   interpreted it as a breach of confidentiality, and fired plaintiff for cause. (*Id.*)

5   Plaintiff then proceeded to file this lawsuit. It began as a *qui tam* suit based on
6   allegations of Medicare/Medicaid fraud, and retaliation. (ECF No. 1). The government
7   eventually declined to intervene in the suit, and plaintiff voluntarily dismissed the fraud claims
8   by amending his complaint. (ECF No. 63). He retained the retaliation claim and added, amongst
9   others, a breach of contract claim related to the employment agreement. (*Id.*)

10  Defendants later moved for summary judgment on all claims. (ECF No. 71). On August
11  29, 2022, this court granted that motion as to all claims, and entered judgment in favor of
12  defendants. (ECF Nos. 85–86). Defendants now move for an award of attorney fees. (ECF No.
13  90).

14  **II.    Legal Standard**

15  Under the "American rule," litigants generally must pay their own attorneys' fees in
16  absence of a rule, statute, or contract authorizing such an award. *See Alyeska Pipeline Co. v.*
17  *Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197
18  F.3d 1276, 1280–81 (9th Cir. 1999). Nonetheless, the decision to award attorneys' fees is left to
19  the sound discretion of the district court. *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d
20  69, 73 (Nev. 1994).

21  "In an action involving state law claims, we apply the law of the forum state to determine
22  whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or
23  procedural rule." *MRO Commc'ns, Inc.*, 197 F.3d at 1282; *see also Alyeska Pipeline Serv. Co.*,
24  421 U.S. at 259 n.31. Under Nevada law, attorneys' fees are available only when "authorized by
25  rule, statute, or contract." *Flamingo Realty*, 879 P.2d at 73; Nev. REV. Stat. § 18.010.
26  Although state law governs whether a party is entitled to attorneys' fees, federal law dictates the
27  procedure for requesting attorneys' fees. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir.
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

2007); *see also MRO Commc'ns, Inc.*, 197 F.3d at 1280–81 (explaining that Rule 54(d)(2) creates a procedure to request attorneys' fees, not a right to recover attorneys' fees).

**III. Discussion**

*A. Awarding attorney fees*

Defendants present two theories allegedly entitling them to fees: (1) a fee award provision in the contract, and (2) Nevada's law regarding offers of judgment. (ECF No. 90). The court finds that the employment agreement awards attorney fees, as is permissible under Nevada law, and it need not address the offer of judgment issue.

The employment agreement provides, in full:

> <u>Costs and Expenses of Enforcement</u> If suit is brought to interpret or enforce any term or provision of this Agreement the Court shall award to the prevailing party, in addition to any other relief to which such party may be entitled, such prevailing party's attorneys fees and costs reasonably and actually incurred.

(ECF No. 90-2 at 24). Plaintiff argues that the phrase "in addition to any other relief to which such party may be entitled," creates a condition precedent that the party seeking fees "MUST RECOVER SOMETHING to be entitled to an award of fees." (ECF No. 93 at 13) (capitalization in original). Therefore, since this court's grant of summary judgment did not award any damages to defendants, they cannot recover fees since the court has not awarded them anything.

The agreement's text clearly belies that argument. The contract provides that the court "shall" award fees to the prevailing party "in addition to any other relief" that the prevailing party "may" be entitled. (ECF No. 90-2 at 24). As the court reads this passage, the use of shall makes the award mandatory. The subsequent use of "in addition to" and "may be entitled" separates the fee award from any other potential award in the case.

Defendant essentially argues that because defendants did not prevail on an affirmative claim, they are not entitled to fees. That is not what the contract provides for. The contract does not say that a claimant or a plaintiff is entitled to fees; it says that a *prevailing party* is entitled to those fees. A prevailing party need not bring affirmative claims of its own. Indeed, a defendant who obtains summary judgment in its favor is a prevailing party on those claims. *See, e.g.*, *Cuzze v. Univ. & Cmty. Coll. Sys. of Nevada,* 172 P.3d 131 (Nev. 2007).

James C. Mahan
U.S. District Judge

- 3 -

The triggering event in the contract provision is the designation of a prevailing party, not the award of independent relief to that party. Otherwise, the contract would have specified that only a claimant or plaintiff could be awarded fees.

Further, the court fails to see how—even if this relief language is a condition precedent—awarding judgment on all claims is not itself "any other relief to which such party may be entitled." This court granted the defendants relief to which they were entitled—a final judgment on all claims. Defendants are thus the prevailing party. *See Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012).

B. *Amount of award*

"When calculating the amount of attorney fees to be awarded in litigation, the district court applies the lodestar method, multiplying the number of hours expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The reasonableness of the requested fee is then determined with reference to the twelve *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). A district court may reduce the amount of requested fees to reflect a party's limited degree of success, to account for block billing, or to deduct hours deemed excessive as long as it provides an adequate explanation for its fee calculation. *Ryan*, 786 F.3d at 763.

The controlling test for determining a reasonable hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). As a general rule, the court

considers the reasonable hourly rate in the relevant community, which is the forum in which the case is pending. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The court may consider rates outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Here, the relevant community is Las Vegas, Nevada. For the Las Vegas market, this court has regularly awarded fees where the hourly rates at issue were between $250 and $400. *See, e.g., Snow v. McDaniel*, No. 3:08-cv-00046-RCJ-VPC, 2014 WL 590489, at *1 (D. Nev. Feb. 14, 2014) (finding a $250 hourly rate reasonably within the context of a section 1988 inquiry); *Gibbs v. Rivers Transp. Group, Inc.*, No. 2:13-cv-00935-JAD-NJK, 2014 WL 204928, at *3 (D. Nev. Jan. 17, 2014) (finding a $250 hourly rate reasonable in Las Vegas); *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013) (finding hourly rates between $375 and $400 reasonable in Las Vegas); *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-01649-JCM-CWH, 2012 WL 6100313, at *3 (D. Nev. Dec. 7, 2012) (finding a $350 hourly rate reasonable in Las Vegas); *Am. Gen. Life Ins. Co. v. Futrell*, No. 2:11-cv-00977-PMP-CWH 2012 WL 5497901, at *3 (D. Nev. Nov. 13, 2012) (finding hourly rates between $250 and $400 reasonable in Las Vegas).

Here, defendants incurred 417.40 hours of legal work until the litigation of the instant motion at hourly rates from approximately $100–$300 for a total of $107,915. (ECF No. 90-2 at 53). This represents a discount from these attorneys' typical rates. (ECF No. 90 at 14).

Defense counsel's hourly rates are within the lodestar rate in the community. The time and labor required for the complexity of the employment and contract issues in this case, the quality of the advocates, addressing plaintiff's litigation strategies, the nature of defendants' relationship with counsel, and the result obtained support the award of fees in full.

Plaintiff's only argument regarding the unreasonableness of defendants' attorney fees is that fees may only be awarded as to work expended on the breach of contract claim, and not for

1  any work done to oppose the Federal Claims Act issues plaintiff abandoned in his second
2  amended complaint. Once again, the employment agreement contradicts that argument.

3  The relevant provision provides for attorney fees in any "suit brought to interpret or
4  enforce" the employment agreement. (ECF No. 90-2 at 24). From the beginning this suit
5  involved a retaliation claim that necessarily required the court to "interpret" the employment
6  agreement. How could the court determine what constituted retaliation if it did not know what
7  plaintiff's job duties were and how he could be terminated from the job? While the Federal
8  Claims Act issues were separate from the retaliation claim, they were part of the same overall
9  suit that required interpretation of the agreement. The agreement provides that attorneys fees
10 shall be paid for any "suit" brought to interpret the contract, not on any "issue" requiring
11 interpretation of the contract. (*Id.*)

12 Nevada law allows contracts to allocate attorney fees. *Flamingo Realty*, 879 P.2d at 73.
13 "It has long been the policy in Nevada that absent some countervailing reason, contracts will be
14 construed from the written language and enforced as written." *Ellison v. Cal. Stat Auto. Ass'n*,
15 97 P.2d 975, 977 (Nev. 1990). The contract here provides that the prevailing party is entitled to
16 attorney fees in any *suit* interpreting the contract. As this suit, from the beginning, involved
17 interpretation of the contract, this court will hold the parties to their bargain and will not disturb a
18 contract that is clear and unambiguous on its face. *See Davis*, 278 P.3d at 515; *Ringle v. Bruton*,
19 86 P.3d 1032 (Nev. 2004). Defendants' motion is granted, and they are awarded their attorney
20 fees and costs in full.

21 **IV.    Conclusion**
22      Accordingly,
23      IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for
24 attorney fees (ECF No. 90) be, and the same hereby is, GRANTED.
25 . . .
26 . . .
27 . . .
28 . . .

**James C. Mahan**
**U.S. District Judge**

- 6 -

Defendants shall prepare and file a proposed order within fourteen (14) days of this order consistent with the foregoing.

DATED January 13, 2023.

_____
UNITED STATES DISTRICT JUDGE